# SILVER GOLUB & TEITELL LLP

RICHARD A. SILVER
DAVID S. GOLUB
ERNEST F. TEITELL
JONATHAN M. LEVINE
PAUL A. SLAGER*
ANGELO A. ZIOTAS
PETER M. DREYER*
JENNIFER B. GOLDSTEIN*
STEVEN L. BLOCH***
JOAQUIN L. MADRY*
MICHAEL R. KENNEDY**
MARCO A. ALLOCCA
DANIEL S. JO****
IAN W. SLOSS*
ZACHARY RYNAR*
SARAH A. RICCIARDI****
NICOLE B. COATES
WILLIAM H. PRICE

OF COUNSEL
MARILYN J. RAMOS*

*      ALSO ADMITTED IN NY
**    ALSO ADMITTED IN MA AND RI
***   ALSO ADMITTED IN NY AND PA
****  ALSO ADMITTED IN NY AND NJ

PLEASE REPLY TO MAIN OFFICE

MAIN OFFICE
THE HERITAGE BUILDING
184 ATLANTIC STREET
STAMFORD, CONNECTICUT 06901
TEL: (203) 325-4491
FAX: (203) 325-3769

HARTFORD OFFICE
GOODWIN SQUARE
225 ASYLUM STREET 15TH FLOOR
HARTFORD, CONNECTICUT 06103

DANBURY OFFICE
100 MILL PLAIN ROAD
DANBURY, CONNECTICUT 06811

WATERBURY OFFICE
21 WEST MAIN STREET
WATERBURY, CONNECTICUT 06702

WWW.SGTLAW.COM

February 20, 2020

Hon. Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007



Re:     *Dill et al v. JP Morgan Chase Bank, N.A.* [*"JPM"*], Case No. 19-cv-10847 (KPF)

Dear Judge Failla:

We and Golenbock Eiseman Assor Bell & Peskie LLP are co-counsel for plaintiffs Dill and Appleby in the above-referenced proposed class action. We write in response to defendant JPM's February 14, 2020 letter seeking to adjourn the conference scheduled for March 12, 2020 and to stay all proceedings, including all discovery, pending decision on JPM's motion to compel arbitration.

As an initial matter, plaintiffs dispute that the purported arbitration provision in JPM's 2012 deposit account agreements relied upon by JPM in support of its motion apply to the subject matter of this action, which involves JPM's wrongful failure to comply with state escheatment laws applicable to abandoned cashier's checks and do not implicate JPM's management of either of plaintiffs' deposit accounts.[1] JPM's motion contends (and plaintiffs dispute) that the arbitration provisions apply to

---

[1] Plaintiffs' claims arise out of JPM's disposition of uncashed (legally "abandoned") cashier's checks payable to plaintiffs (and other similarly-situated payees). Plaintiffs contend that pursuant to 12 U.S.C. § 2503, these checks escheat to the State in which the check was purchased (or, if that State is unknown) to the State of the institution's principal place of business, here New York. We allege that JPM, in order to take advantage of favorable aspects of Ohio's escheatment law, failed to comply with § 2503 and reported thousands of these uncashed -- over $118 million in value --to Ohio even though the checks had been purchased in non-Ohio States. In doing so, JPM also did not give check owners proper

claims pertaining to JPM's wrongful failure to comply with applicable escheatment law several years later (and years after their accounts were closed) and bars class arbitration.

Plaintiffs recognize that the scope of the arbitration provisions is a legal issue and do not seek discovery on that issue. But even assuming *arguendo* that the arbitration provisions apply to plaintiffs' claims, this is not a case in which either plaintiff signed an arbitration agreement or that there is some other form of undisputed agreement to arbitrate. Plaintiffs dispute the existence of any such agreements and submit they are entitled to discovery on this threshold issue before JPM's motion can be adjudicated.

Plaintiffs acknowledge that where there is no dispute about the existence of an agreement to arbitrate, there is no need for discovery and a motion to compel arbitration may ordinarily be decided on the basis of the undisputed agreement and the claims at issue. But where – as in this case – there was no agreement to arbitrate signed by either of the plaintiffs, and where both plaintiffs dispute that they ever knew of or agreed to the arbitration provision in the 2012 deposit agreement, plaintiffs are entitled to discovery to challenge JPM's claims that agreements to arbitrate exist.

"[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). As the Third Circuit has explained:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." [citation omitted]. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." [citation omitted].

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013); *see Meyer*, 868 F.3d at 74 (where existence of agreement to arbitrate is disputed, courts apply a summary judgment-like standard based on the traditional forms of discovery – "pleadings, depositions, interrogatories and admissions, [and] affidavits" – to decide motion to compel arbitration.)

These principles are applicable to both plaintiffs, who dispute they ever knew of or agreed to the arbitration provision in the 2012 deposit agreement upon which JPM relies. Plaintiff Appleby (a resident of California) disputes that he ever received, in person or by mail, JPM's 2012 deposit account agreement. JPM refers to a signature card purportedly signed by him acknowledging receipt of an account agreement. But JPM has carefully chosen not to attach the signature card to its moving papers, and as JPM is aware, Mr. Appleby was added as a signatory to another holder's existing account established prior to 2012 (when the provision relied on by JPM was added). Plaintiff Appleby does not know whether the card referenced by JPM is the original card signed when the account was opened or a new card that he signed in 2012, but is prepared to submit a Declaration averring that he did not receive the 2012 agreement, was never advised

orally of the arbitration provision in the agreement, and had no knowledge of the provision prior to learning of it as a result of JPM's motion here and never knowingly agreed to arbitrate.

As to plaintiff Dill (a resident of Connecticut), JPM contends it mailed the 2012 agreement as an insert to its customers' December 2011 bank statement. Mr. Dill has no recollection of ever receiving the 2012 booklet. He is prepared to submit a Declaration averring that he never read the 2012 account agreement, was never advised orally of the arbitration provision in the agreement, had no knowledge of the provision prior to learning of it as a result of JPM's motion here, and never knowingly agreed to arbitrate. JPM has submitted no documentary evidence supporting its Vice President's description (in 2020) of its business practices in 2011, and her Declaration does not recite her 2011 position when the insert was purportedly sent or what the basis for her purported "personal knowledge" of events in 2011 is. Indeed, as with its assertions about Mr. Appleby, JPM's submissions are rife with hearsay based on documents not provided to plaintiffs or before the Court.

"Whether or not the parties have agreed to arbitrate is a question of state contract law." *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26 (2d Cir. 2002). Under Connecticut law, Mr. Dill's factual assertions that he never received or knew of the document purporting to establish his assent to arbitration preclude a finding, as a matter of law, that he agreed to arbitrate. *See e.g., Barravecchia v. Electric Boat Corporation*, No. 4102117, 2006 WL 829623 at *3 (Conn. Super. March 4, 2006) (plaintiff's affidavit denying receipt or knowledge of defendant's claimed dispute resolution program raises factual issue requiring resolution at trial).

California and Connecticut law both require a summary judgment-like determination of whether Mr. Appleby entered into an enforceable agreement to arbitrate, based on traditional forms of evidence adduced in discovery. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (in case involving California and Connecticut law, applying "standard similar to that applicable for a motion for summary judgment" in affirming holding that unacknowledged document sent to plaintiff did not create enforceable agreement to arbitrate ); *see Meyer*, 868 F.3d at 74 (discussing the summary judgment standard in reference to an alleged California agreement to arbitrate).

Plaintiffs agree that merits and class certification discovery should be stayed, and propose the following: Before JPM's motion to compel is adjudicated, plaintiffs may conduct discovery on the issues of whether either entered into an enforceable agreement to arbitrate their claims in this action. The parties should be directed to immediately confer and submit a schedule for such discovery or advise the Court promptly if no agreement is reached. If the parties are unable to agree, the Court should either set a schedule for the discovery or resolve the issues at the presently-scheduled March 12 conference, or earlier, if possible.

Respectfully,

/s/ David S. Golub
David S. Golub

The Court is in receipt of Defendant's letter requesting an adjournment of the initial pretrial conference scheduled in this action for March 12, 2020, as well as a stay on discovery and other deadlines while the parties litigate Defendant's pending motion to compel arbitration (Dkt. #25), and Plaintiffs' opposition to most of those requests (Dkt. #26). The Court finds that Plaintiffs have raised substantive questions regarding the need for discovery regarding the arbitrability of this action, and therefore ORDERS the parties to meet and confer on a schedule for discovery relating solely to the existence of a valid arbitration agreement between the parties. The parties are directed to update the Court by joint letter on or before March 5, 2020, with either a letter detailing an agreed-upon discovery schedule or a letter both noting failure to agree upon a schedule and providing the other information required by the Court's Notice of Initial Pretrial Conference. (Dkt. #16).

Dated:    February 21, 2020            SO ORDERED.
          New York, New York

          Katherine Polk Failla

          HON. KATHERINE POLK FAILLA
          UNITED STATES DISTRICT JUDGE